UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MISTY LYNN WESLEY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-200-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ACCESSIBLE HOME CARE, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

*Pro se* plaintiff Misty Wesley alleges that Defendant Accessible Home Care ("AHC") failed to pay her federal minimum wage and overtime compensation when she was employed as a live-in caregiver in 2017.[1] AHC has filed a second motion to dismiss Wesley's Complaint on mootness grounds based on AHC's most recent Rule 68 offer of judgment. [Record No. 74] The motion will be granted because there is no question that AHC's offer of judgment gives Wesley full relief regarding her Fair Labor Standards Act ("FLSA") claims.

**I.**

A plaintiff must maintain a live controversy throughout an action. A case becomes moot when interim events deprive the court of the ability to redress the plaintiff's injuries. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); *Int'l Union, United Auto, Aero, Agr. & Implement Workers of Am. v. Dana Corp.*, 697 F.2d 718, 721 (6th Cir. 1983).

---

[1] Wesley has a history of abusive litigation and is required to obtain Court certification before filing a new lawsuit. *See* General Order 07-06. She asserted several other claims against AHC in her application to file this suit, but she was only permitted to proceed with minimum wage and overtime claims under the Fair Labor Standards Act. [Record Nos. 5, 7]

As this Court has explained previously, a Rule 68 offer of judgment may moot a plaintiff's claim under certain circumstances. [Record No. 61, p. 4-4 (discussing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) & *Mey v. North Am. Bancard, LLC*, 655 F. App'x 332 (6th Cir. 2016)).] Here, those circumstances have been satisfied because: 1) AHC's offer of judgment satisfies Wesley's demand for relief regarding the claims she is permitted to bring and 2) AHC has deposited the funds in the Court's registry for payment to Wesley upon entry of Judgment.

## II.

Wesley's surviving claims are based on her allegations that the defendant failed to pay her minimum wage and overtime during her employment as a live-in caregiver, as required by the FLSA, 29 U.S.C. §§ 206, 207. Wesley alleges that she held this position for about six months. [Record No. 43, p. 2] AHC's payroll records corroborate this allegation, indicating that Wesley provided live-in services first on June 9, 2017, and the last on December 9, 2017. [Record No. 74-4, pp. 4-10] Wesley complains that, during this period, she worked twenty-four hour shifts three to four times per week and was paid a flat fee of $170.00 per shift. AHC has conceded Wesley's allegations for purposes of its motion and has submitted records showing the days Wesley worked. [Record No. 74-4, pp. 4-10] Wesley has not disputed the accuracy of these records, which correspond with the allegations regarding her work schedule. [*See* Record No. 53.]

AHC used its payroll records, along with Wesley's suggested calculations, to determine the compensation owed to her. Wesley began working twenty-four-hour shifts during the first full week of June 2017, when she also worked with patients on an hourly basis at a rate of $9.50 per hour. [*See* Record Nos. 10, 74-4.] When employees perform two different types of

work for different rates of pay during a single workweek, the regular rate for that week is the weighted average of those rates. 29 C.F.R. § 778.115. The weighted average is determined by computing the employee's total earnings for the week and dividing the earnings by the total number of hours worked at all jobs. *Id.* Here, Wesley worked 18.25 hours as a CNA and 72 hours as a live-in caregiver, earning a total of $683.38. Based on these values, Wesley's regular rate for the week of June 5, 2017 is $7.57. Forty hours at this rate equals $302.80. Her overtime compensation—50.25 hours times one and one-half the regular rate ($11.36)—equals $570.84. Therefore, Wesley's compensation for this week should have been $873.64, not $683.38. As a result, she is entitled to $190.26 with respect to the work week of June 5, 2017.

The remaining calculations are more straightforward because Wesley worked at a single rate of pay for the remainder of her employment. Employees may be paid a flat sum for a day's work or for doing a particular job. *See* 29 C.F.R. 778.112. The employee's regular rate normally is determined by totaling all sums received at such rates and dividing by the total number of hours actually worked. *Id.* But such an employee's regular rate cannot fall below the federally-mandated minimum wage.

Wesley noted in her Complaint that $170.00, divided by twenty-four hours is only $7.08 per hour—lower than the $7.25 minimum wage. *See* 29 U.S.C. § 206(a)(1)(C). [Record No. 10, p. 5] She contends that the pay rate for her live-in position should be increased to $7.25 per hour. [Record No. 53] Since overtime compensation must be a rate "not less than one and one-half times [an employee's] regular pay," Wesley argues she is entitled to overtime compensation at a rate of $10.88 per hour. *Id.*

The specific dates, hours worked, and amounts of pay she actually received are as follows:[2]

Week of June 15, 2017—72 hours--$510.00

Week of June 21, 2017—72 hours--$510.00

Week of June 27, 2017—72 hours--$510.00

Week of July 3, 2017—96 hours--$765.00[3]

Week of July 10, 2017—96 hours--$680.00

Week of July 17, 2017—96 hours--$680.00

Week of July 24, 2017—96 hours--$680.00

Week of August 4, 2017—72 hours--$510.00

Week of August 10, 2017—72 hours--$510.00

Week of August 16, 2017—72 hours--$510.00

Week of August 22, 2017—72 hours--$510.00

Week of August 28, 2017—96 hours--$680.00

Week of September 4, 2017—96 hours--$765.00[4]

Week of September 11, 2017—96 hours--$680.00

Week of September 21, 2017—72 hours--$510.00

Week of September 27, 2017—72 hours--$510.00

Week of October 3, 2017—72 hours--$510.00

Week of October 9, 2017—96 hours--$680.00

---

[2] As reflected in Record No. 74-4.
[3] Wesley was paid $225.00 for working July 4, 2017.
[4] Wesley was paid $225.00 for working September 4, 2017.

Week of October 16, 2017—96 hours--$680.00

Week of October 23, 2017—96 hours--$680.00

Week of November 3, 2017—72 hours--$510.00

Week of November 7, 2017—96 hours--$680.00

Week of November 13, 2017—96 hours--$680.00

Week of November 25, 2017—72 hours--$595.00

Week of December 1, 2017—72 hours--$510.00

Week of December 7, 2017—72 hours--$510.00

The defendant, and this Court, have utilized Wesley's requested rates of $7.25 and $10.88 to calculate the appropriate amount of wages. Applying those values, Wesley should have been paid $638.16 for the weeks she worked 32 hours of overtime, and $899.28 for the weeks she worked 56 hours of overtime. From June 15, 2017, through December 9, 2017, there were 14 weeks during which Wesley worked 32 overtime hours and 12 weeks during which she worked 56. This results in a sum of $19,725.60 and, when combined with the compensation owed to Wesley for the week of June 5, 2017, a total of $20,599.24.

AHC's payroll records indicate that Wesley was paid $16,238.38 during the relevant time period, resulting in a balance owed to Wesley of $4,360.86. [*See* Record No. 74-4.] AHC's offer of judgment in the amount of $4,455.00 is more than sufficient to compensate her for these wages. The defendant has also agreed to the injunctive relief that Wesley has requested: a neutral employment reference and an agreement to refrain from discussing this lawsuit with third-parties. [Record Nos. 10, p. 10; 68-1]

In response to AHC's motion to dismiss, Wesley demands $13,518.90, but does not explain why. To the extent Wesley seeks damages under the Portal-to-Portal Act, 29 U.S.C.

§ 251, *et seq.*, she has not received the Court's authorization to bring such a claim. And she has not alleged any facts to indicate that she performed activities that are compensable under the Act for which she was not compensated. *See* 29 U.S.C. § 254.

A final note is appropriate in this case. Throughout this litigation, Wesley continues attempting to pursue claims that have been disallowed, makes frivolous filings, and engages in ad hominem attacks against various individuals. [Record Nos. 32, 38, 40, 44, 49, 52, 54, 56, 63, 64, 77] She is therefore reminded that a court's "special solicitude" toward *pro se* litigants "does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 558 (S.D.N.Y. 2007) (imposing pre-filing restrictions against a litigant "unwilling[] to accept unfavorable rulings on her claims. Each time her claims are dismissed, she repackages them with new labels, against new defendants, and in new courts, as part of an 'ever-broadening conspiracy theory.'").

Any person proceeding *pro se* who repeatedly makes frivolous and/or abusive filings abuses the right to represent herself without counsel and imposes a heavy burden upon the resources of the court at the expense of other litigants with potentially meritorious claims. Simply put, this conduct is not appropriate and should not be tolerated. Wesley is advised that the Court may impose sanctions as may be necessary and appropriate to deter such conduct, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991), and will not hesitate to do so should Wesley continue such conduct in the future.

**III.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendant AHC's Second Motion to Dismiss [Record No. 74] is **GRANTED**.

2. Related case 5: 18-CV-377-DCR is **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

3. A corresponding Judgment will be entered this date.

Dated: December 6, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge